FILED

AUG 30, 2021

Clerk, U.S. District Court
District of Montana
Billings Division

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No.  **CV-21-94-BLG-SPW-TJC** |
| NORTHERN CHEYENNE UTILITIES COMMISSION, | |
| Defendant. | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorney on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1.      This a civil action brought pursuant to Section 309(b) and (d) of the Clean Water Act ("Act" or "CWA"), 33 U.S.C. § 1319(b) and (d), for injunctive relief and for the assessment of civil penalties against the Northern Cheyenne

Utilities Commission ("Defendant" or "NCUC") for numerous violations of the Clean Water Act and its implementing regulations.

2.     Defendant operates the Lame Deer wastewater treatment facility and collection system (collectively, "Facility"), located in Lame Deer, Montana and within the exterior boundaries of the Lame Deer Indian Reservation.

3.     Defendant discharged pollutants from the Facility in violation of the terms of its National Pollutant Discharge Elimination ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Defendant also discharged pollutants without an NPDES permit. These actions violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

4.     Defendant has violated Section 309(a) of the CWA, 33 U.S.C. § 1319(a), for failing to comply with a July 7, 2015, administrative compliance order issued by EPA to Defendant.

## JURISDICTION, VENUE, AND NOTICE

5.     This Court has jurisdiction over the parties and subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. §§ 1319(b) and 28 U.S.C. §§ 1331, 1345 and 1355.

6.      Venue is proper in the District of Montana pursuant to 28 U.S.C §§ 1391(b) and 1395(a), as well as Section 309(b) of the CWA, 33 U.S.C. § 1319(b),

because it is the judicial district where Defendant is located, where a substantial part of the events or omissions giving rise to the claim occurred, and where the alleged violations occurred.

7.      Notice of commencement of this action has been given to the State of Montana, in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319.

## DEFENDANT

8.      The NCUC is established by and chartered under the laws of the Northern Cheyenne Tribe ("Tribe").

9.      The Tribe is a federally recognized tribe governed by the Northern Cheyenne Tribal Council, consisting of a President, Vice President, and Tribal Council members that represent the Tribe's community districts.

10.      The NCUC has adopted bylaws, rules, and regulations to govern it, which the Northern Cheyenne Tribal Council approved.

11.      The NCUC is responsible for providing wastewater treatment services to five community districts within the exterior boundaries of the Northern Cheyenne Indian Reservation ("Reservation") in Southeastern Montana: Lame Deer District, Busby District, Birney District, Ashland District, and Muddy District.  Each community district is serviced by a Tribally-owned wastewater treatment facility.

12.     The NCUC operates the Facility, which is located in the Lame Deer District and town of Lame Deer, Rosebud County, Montana at Township 2S, Range 41 E, Section 33, and within the exterior boundaries of the Reservation.

13.     The NCUC is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

14.     The NCUC is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

15.     The NCUC owns and operates a "treatment works" as that term is defined in Section 212(2) of the CWA, 33 U.S.C. § 1292, and a "publicly owned treatment works" ("POTW") as that term is defined in EPA regulations implementing the CWA, 40 C.F.R. § 122.2 (cross-referencing the definition at 40 C.F.R. § 403.3(q)).

## STATUTORY AND REGULATORY BACKGROUND

### Clean Water Act

16.     The CWA is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes a national goal to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1).

17.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as authorized by an NPDES permit issued by the EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

18.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

19.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), includes "sewage" in the definition of "pollutant."

20.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernable, confined and discrete conveyance . . . from which pollutants are or may be discharged."

21.     Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" to be the "waters of the United States, including the territorial seas."

22.     Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United States, subject to the conditions and limitations set forth in such permits.

23.     Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), directs EPA to prescribe conditions and limitations, including effluent limitations, for NPDES permits to assure compliance with the requirements of the CWA.

24.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents which are discharged from point sources.

25.     Pursuant to 40 C.F.R. § 122.41, a NPDES permit must include all the conditions in the paragraphs of 40 CFR § 122.41.

26.     Pursuant to 40 C.F.R. § 122.41(a), a permittee must comply with all conditions of its NPDES permit.

27.     Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3), authorizes EPA to issue compliance orders whenever it finds that any person has violated Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation implementing such Section in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

28.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action to obtain appropriate relief, including a permanent or temporary injunction, when any person discharges without a permit in violation of

6

Section 301 of the CWA, 33 U.S.C. § 1311, violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, or violates any order issued by EPA pursuant to Section 309(a) of the CWA, 33 U.S.C. § 1319(a).

29.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, provides that any person who discharges in violation of Section 301(a), 33 U.S.C. § 1311(a), or who violates any condition or limitation contained in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $37,500 per day for each violation that occurred after December 6, 2013 through November 2, 2015; and not to exceed $56,460 per day for each violation which takes place after November 2, 2015.

## GENERAL ALLEGATIONS

### Defendant's Facility Operations

30.     Defendant is responsible for providing sewage wastewater treatment services to the Lame Deer District, which is located within the exterior boundaries of the Reservation.

31.     Defendant operates and maintains the Tribally-owned Facility that provides sewage wastewater treatment services to the Lame Deer District.

32.     Defendant is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

33.     The Facility first began operating under a NPDES permit in 2005.

34.     The Facility consists of a three-cell treatment lagoon, a lift station and collection system. The collection system conveys untreated sewage to the lagoon for settling, aeration, and biological treatment before discharging treated sewage wastewater at Outfall No. 001 from the northwest corner of the lagoon's third treatment cell into Lame Deer Creek.

35.     The Facility serves both residential and commercial sewage wastewater service accounts.

36.     Sewage is a "pollutant" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

37.     The Facility is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

38.     Lame Deer Creek is a perennial stream that flows north into Rosebud Creek, a tributary of the Yellowstone River, which flows into the Missouri River.

39.     Lame Deer Creek has been determined to be a jurisdictional water by the United States Army Corps of Engineers and is a "waters of the United States"

within the meaning of 40 C.F.R § 120.2(1) and therefore, a "navigable water"

within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

### Defendant's NPDES Permits

40.     EPA has the primary responsibility for administering the NPDES

program in Indian Country pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

41.     At all times, Defendant is required to operate the Facility pursuant to a

NPDES permit.

42.     From March 1, 2011 to February 28, 2016, Defendant operated the

Facility under the authority of NPDES Permit No. MR0029360 ("2011 NPDES

Permit").

43.     Defendant failed to timely submit a complete application for renewal

of the NPDES permit and on February 29, 2016, Defendant's 2011 NPDES Permit

for the Facility expired.

44.     From approximately February 29, 2016 to approximately February 28,

2018, Defendant operated the Facility without the required NPDES permit.

45.     On or about June 30, 2017, Defendant submitted to EPA an

application for a NPDES permit for the Facility.

46.     On or about January 18, 2018, EPA re-issued NPDES Permit No. MR0029360 (effective March 1, 2018 until December 31, 2022) ("2018 NPDES Permit") for the Facility.

47.     Defendant currently operates the Facility under the authority of the 2018 NPDES Permit.

48.     Defendant is subject to the requirements of the CWA, regulations implementing the CWA, and the Facility's NPDES permit.

49.     At various times relevant to this Complaint, NCUC has "discharged" and continues to discharge "pollutants" within the meaning of Sections 502(6) and (16) of the Act, 33 U.S.C. §§ 1362(6) and (16), from the Facility through "point sources" within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362.

50.     The Facility's 2011 and 2018 NPDES Permits do not authorize Defendant to discharge untreated sewage from the Facility into waters of the United States.

51.     The Facility's 2011 and 2018 NPDES Permits only authorize Defendant to discharge treated sewage wastewater from Outfall No. 001 located at the northwest corner of the Facility's lagoon cell number three into Lame Deer Creek, subject to certain terms and conditions stated in the applicable NPDES permit.

10

52.     The Facility's 2011 NPDES Permit contains the following terms and conditions which are relevant to this action:

    a.  2011 NPDES Permit, Part 1.2 provides authorization for Defendant to discharge from Outfall No. 001 from the northwest corner of the Facility's lagoon cell number three into Lame Deer Creek.

    b.  2011 NPDES Permit, Part 1.3 contains the limitations and monitoring requirements for effluents discharged from Outfall No. 001.

    c.  2011 NPDES Permit, Part 1.3.1 establishes, among other things, the specific effluent limitations for certain pollutants, including biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), fecal coliform, and pH, discharged from Outfall No. 001.

    d.  2011 NPDES Permit, Part 1.3.2 establishes the specific monitoring and sampling requirements, including type and frequency, for effluent discharges from Outfall No. 001.

    e.  2011 NPDES Permit, Part 1.3.3 establishes various inspection requirements.

    f.  2011 NPDES Permit, Part 1.3.3.1 requires, among other things, that Defendant conduct weekly Facility inspections.

g.  2011 NPDES Permit, Part 1.3.3.2 requires, among other things,
that Defendant maintain a notebook of information obtained during
Facility inspections.

h.  2011 NPDES Permit, Part 1.3.3.3 requires that problems identified
during the Facility inspections be addressed through proper
operation and maintenance.

i.  2011 NPDES Permit, Part 1.3.4 requires Defendant to select a type
of disinfection at the Facility to meet fecal coliform limits and
submit a report to EPA documenting the decision by September 1,
2011, to install the selected disinfection by March 1, 2012, and
comply with fecal coliform limits by September 1, 2012.

j.  2011 NPDES Permit, Part 2.1 requires that samples taken in
compliance with the monitoring requirements of 2011 NPDES
Permit Part 1 be collected from the effluent stream prior to
discharge into receiving waters and be representative of the
monitored discharge.

k.  2011 NPDES Permit, Part 2.2 requires that monitoring be
conducted in accordance with procedures approved under 40
C.F.R. Part 136.

l.  2011 NPDES Permit, Part 2.4 requires the submittal to the EPA of monthly Discharge Monitoring Reports ("DMRs") no later than the 28th day of the month following the completed reporting period.

m. 2011 NPDES Permit, Part 2.8 requires Defendant to report any noncompliance that may endanger health or the environment as soon as possible, but no later than 24 hours from the time Defendant first became aware of the circumstances and submit a written report to EPA and the Tribe within five days.

n.  2011 NPDES Permit, Part 3.1 requires Defendant to comply with all conditions of the permit.

o.  2011 NPDES Permit, Part 3.5 requires the Defendant to at all times properly operate and maintain all facilities and systems of treatment and control installed to achieve compliance with the permit.

53.     The Facility's 2018 NPDES Permit contains the following terms and conditions which are relevant to this action

a.  2018 NPDES Permit, Part 1.2 provides authorization for Defendant to discharge from Outfall No. 001 from near the west corner of the Facility's lagoon cell number three into Lame Deer Creek and

Outfall No. 001R from near the Montana Highway 39 bridge over Lame Deer Creek about three and one-half miles north of Lame Deer.

b. 2018 NPDES Permit, Part 1.3 contains the limitations and monitoring requirements for effluents discharged from Outfall No. 001 and Outfall No. 001R.

c. 2018 NPDES Permit, Part 1.3.1 establishes, among other things, the specific effluent limitations for certain pollutants, including BOD, TSS, fecal coliform, and pH, discharged from Outfall No. 001.

d. 2018 NPDES Permit, Part 1.3.1.1 provides ammonia criteria tables and average ammonia limits.

e. 2018 NPDES Permit, Part 1.3.2 establishes the specific monitoring and sampling requirements, including type and frequency, for effluent discharges from Outfall No. 001.

f. 2018 NPDES Permit, Part 1.3.3 establishes the ambient monitoring requirements for Outfall No. 001R.

g. 2018 NPDES Permit, Part 1.3.4 requires Defendant to submit monthly DMRs in accordance with 2018 NPDES Permit, Part 2.3.

h.  2018 NPDES Permit, Part 1.3.5, establishes various inspection
requirements.

i.  2018 NPDES Permit, Part 1.3.5.1 requires, among other things,
that Defendant conduct weekly Facility inspections.

j.  2018 NPDES Permit, Part 1.3.5.2, requires, among other things,
that Defendant maintain a daily log of Facility inspections.

k.  2018 NPDES Permit, Part 2.3 requires Defendant to electronically
report the DMRs using NetDMR and that the electronic
submissions be sent to EPA no later than the 28th of the month
following the completed reporting period and also be signed and
certified. A copy of the DMR must also be submitted to the Tribe.

l.  2018 NPDES Permit, Part 2.4 and Part 5.10 provides specific
requirements on the creation, content, and monitoring and
maintenance of records.

m. 2018 NPDES Permit, Parts 2.5.1, 2.5.3 and 5.12.6.1 requires
Defendant to report any noncompliance which may endanger
health or the environment as soon as possible, but no later than 24
hours from the time Defendant first became aware of the

circumstances and submit a written report to EPA and the Tribe within five days.

n.  2018 NPDES Permit, Part 5.1 requires Defendant to comply with all conditions of the permit.

o.  2018 NPDES Permit, Part. 5.5 requires Defendant to at all times properly operate and maintain all facilities and systems of treatment and control installed to achieve compliance with the permit.

p.  2018 NPDES Permit, Part 5.10.4 requires that monitoring be conducted according to test procedures approved under 40 C.F.R Part 136.

**Potential Contamination/Pollution of Water**

54.     When backups or sanitary sewer overflows ("SSOs") occur from the Facility's collection system, operated by the Defendant, untreated sewage will overflow from manholes within the collection system and discharge onto the ground. Such discharges are likely to flow into or otherwise reach Lame Deer Creek, a jurisdictional water of the United States.

55.     When overtopping occurs at the Facility's lagoon, operated by the Defendant, untreated or partially treated sewage will overflow from the Facility's

lagoon cells and discharge into Lame Deer Creek, a jurisdictional waters of the United States.

## Health Risks Related to Sewage

56.     When untreated sewage leaks, spills or overflows from the Facility, people can come into contact with it.

57.     Untreated sewage contains viruses and protozoa as well as other parasites.

58.     Infection with organisms contained in untreated sewage can cause a number of adverse health effects ranging from minor illnesses such as sore throats and mild gastroenteritis (causing stomach cramps and diarrhea) to life-threatening ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis.

59.     Children, the elderly, people with weakened immune systems, and pregnant women are at more risk for adverse consequences from such infections than the general population.

## Defendant's Compliance History

60.     On March 31, 2014, EPA issued a final Compliance Assistance Plan ("2014 CAP") to Defendant and the Tribe to bring the Facility into compliance with the CWA. The 2014 CAP included a list of the Facility's violations from January 2007 through May 2013 and required corrective actions to be taken.

61.     On May 15, 2014, EPA issued a Notice of Violation of the 2014 CAP and the 2011 NPDES Permit to Defendant and the Tribe for ongoing discharges of partially treated sewage wastewater from the Facility lagoon.

62.     On November 3, 2014, EPA closed the 2014 CAP due to NCUC's failure to return the facility to compliance and ongoing discharges of insufficiently treated sewage from the facility into Lame Deer Creek.

63.     On or about July 7, 2015, EPA issued to Defendant and the Facility a Findings of Violation and Order for Compliance ("2015 EPA Order"), pursuant to Section 309(a) of the CWA, 33 U.S.C. § 1319(a), alleging violations of Section 301 of the CWA, 33 U.S.C. § 1311 and the Facility's NPDES permit..

64.     The 2015 EPA Order directed Defendant to perform specific actions within specified timeframes to return the Facility to CWA compliance, the following of which are relevant to this action:

   a. 2015 EPA Order, Paragraph 108 required Defendant to comply with all requirements of the Facility's 2011 NPDES Permit.

   b. 2015 EPA Order, Paragraph 109 required Defendant, among other things, to submit to EPA a plan and schedule to install disinfectant at the Facility and comply with the fecal coliform limitation in the

Facility's 2011 NPDES Permit within 60 days of receipt of the
2015 EPA Order.

c.   2015 EPA Order, Paragraph 113(a), (c), (d), and (e), respectively,
required Defendant, among other things, to develop and submit to
EPA, no later than 120 days after receiving the 2015 EPA Order, a
draft Plan of Operations that includes (i) an Overflow Emergency
Response Plan to protect public health from overflows and
unanticipated bypasses or upsets that exceed any effluent limitation
in the Facility's NPDES permit; (ii) design and performance
provisions for the installation and inspection of certain equipment
and repair projects and a list of changes made to the Facility or to
respond to future lift station failures; (iii) create and prepare a
three-year budget; and (iv) establish and provide to staff field
standard operating procedures for the wastewater treatment and
collection systems.

d.   2015 EPA Order, Paragraph 117 required Defendant, among other
things, to include a certified statement from an authorized
representative on all reports and information required by the 2015
EPA Order.

65.     Defendant failed to fully and timely comply with the 2015 EPA Order and provisions listed in Paragraph 25, above.

## FIRST CLAIM FOR RELIEF
**(Unpermitted Discharges of Pollutants into Waters of the United States)**

66.     The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

67.     From approximately February 29, 2016 to approximately February 28, 2018, Defendant continuously operated the Facility without a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, and illegally discharged sewage wastewater from Outfall No. 001 of the Facility into Lame Deer Creek.

68.     Defendant's unpermitted discharges have resulted in whole or in part from Defendant's failure to timely renew or otherwise obtain the required NPDES permit.

69.     Sewage is a "pollutant" within the meaning of Sections 502(6) and (16) of the Act, 33 U.S.C. §§ 1362(6) and (16).

70.     The Facility's lagoon and Outfall No. 001 are each a "point source" within the meaning of the CWA, 33 U.S.C. § 1362(14).

71.     Lame Deer Creek is a "water of the United States" within the meaning of EPA regulations and a navigable water within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

72.     Each day of each unpermitted discharge of pollutants to waters of the United States is a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

73.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant is liable for injunctive relief to prevent further discharges in violation of the Clean Water Act.

74.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for civil penalties of up to $56,460 per day of violation for each unauthorized discharge identified on Appendix G occurring after November 2, 2015.

### SECOND CLAIM FOR RELIEF
**(NPDES Permit Violations)**

75.     The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

76.     At all relevant times, Defendant's operation of the Facility was subject to the requirements of the applicable 2011 and 2018 NPDES Permits, issued under Section 402 of the CWA, 33 U.S.C. § 1342.

77.     Pursuant to 40 C.F.R. § 122.41, a permittee such as Defendant must comply with all conditions of its NPDES permit.

78.     The 2011 NPDES Permit authorizes discharges from the Facility to Lame Deer Creek from Outfall No. 001 subject to certain conditions and limitation, including effluent limitations and monitoring requirements.

79.     The 2018 NPDES Permit authorizes discharges from the Facility to Lame Deer Creek from Outfall No. 001 and 001R subject to certain conditions and limitations, including effluent limitations and monitoring requirements.

80.     Defendant has violated multiple conditions and limitations of the 2011 and 2018 NPDES Permits as described below.

**Effluent Limit Violations**

81.     Part 1.3.1 of Defendant's 2011 NPDES Permit contains effluent limitations for multiple pollutants, including BOD, pH, TSS, and Fecal Coliform bacteria.

82.     Based on DMRs and other sampling analysis submitted by Defendant to EPA, Defendant exceeded applicable effluent limitations in the 2011 NPDES Permit on at least 73 occasions since 2011. See Appendix A.

83.     Each violation of the 2011 NPDES Permit identified in Appendix G is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

## Violations of other Permit Conditions

84.     Part 1.3 of Defendant's 2011 and 2018 NPDES Permits require Defendant to monitor and sample discharged pollutants from specified discharge points of the Facility.

85.     On at least 1,296 occasions, Defendant failed to conduct and report the self-monitoring requirements for Outfall No. 001 to EPA as required by 2011 NPDES Permit, Parts 1.3.2, 2.1 and 2.2 and 2018 NPDES Permit, Parts 1.3.2 and 5.10.4. See Appendix A.

86.     Defendant failed to submit DMRs to EPA in accordance with 2011 NPDES Permit, Part 2.4 and 2018 NPDES Permit, Parts 1.3.4 and 2.3 on the following occasions: March 2011 – September 2011; November 2011; February 2013; July 2013 – December 2013; October 2014 - November 2014; January 2015; May 2015; September 2015; October 2015; and March 1, 2018 through the date of this Complaint.

87.     Defendant failed to comply with Part 1.3.4 of Defendant's 2011 NPDES Permit, which required Defendant to a) select a type of disinfection and

submit a report to EPA documenting the decision by September 1, 2011; b)

complete installation of the disinfection and submit a report to EPA documenting

the installation by March 1, 2012; and c) come into compliance with fecal coliform

limitations and submit a report to EPA documenting compliance by September 1,

2012.

88.     On numerous occasions since March 2011, Defendant failed to

conduct and document the required weekly inspections of the Facility as required

by 2011 NPDES Permit, Parts 1.3.3.1 and 1.3.3.2 and 2018 NPDES Permit Parts

1.3.5.1 and 1.3.5.2.

89.     Based on reports from Indian Health Services to EPA, from

approximately June 2015 – February 2016, Defendant discharged untreated sewage

from the Facility's collection system into a nearby residential lot, endangering

health or the environment, and failed to comply with the required 24-hour

reporting requirements and the subsequent five day written report requirements in

Part 2.8 of the 2011 NPDES Permit.

90.     Defendant's failure to comply with all conditions of the permit is a

violation of 2011 NPDES Permit, Part 3.1 and 2018 NPDES Permit, Part 5.1.

91.     Defendant's failure to comply with effluent limitations, monitoring

and sampling requirements, submit required reporting, timely install required

disinfection, and prevent unpermitted discharges demonstrates a failure to properly operate and maintain all facilities and installed systems of treatment and control to achieve compliance with the permit and a violation of 2011 NPDES Permit, Part 3.5 and 2018 NPDES Permit, Part 5.5.

92.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant is liable for injunctive relief to prevent further discharges in violation of the Clean Water Act.

93.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for civil penalties of up to $37,500 per day of violation for each violation of the 2011 NPDES Permit occurring after December 6, 2013 through November 2, 2015; and up to $56,460 per day of violation for each violation 2018 NPDES Permit occurring after November 2, 2015.

## THIRD CLAIM FOR RELIEF
### (Failure to Comply with an EPA Administrative Order)

94.     The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

95.     On or about July 7, 2015, the EPA issued an Administrative Order for Compliance ("2015 EPA Order") to Defendant.

96.     Defendant failed to timely comply with the following requirements of the 2015 EPA Order:

a. 2015 EPA Order, Paragraph 108. Defendant exceeded the 30-day and 7-day average limits for fecal coliform bacteria in the August, September, and October 2015 monitoring periods; exceeded the 30-day average for TSS in the August 2015 monitoring period; exceeded the 30-day and 7-day average limits for BOD in the January 2016 monitoring period; did not report average or daily maximum flow values for the August, September, October, November, and December 2015 and January, February and March 2016 monitoring periods; did not report any oil and grease values for the November 2015 monitoring period; failed to timely submit DMRs for the September and October 2015 monitoring periods.

b. 2015 EPA Order, Paragraph 109. Defendant failed to submit a plan and schedule to install disinfectant and comply with the fecal coliform limitation to the EPA within 60 days of receipt of the 2015 EPA Order.

c. 2015 EPA Order, Paragraph 113(a). Defendant failed to address the following in the Facility's Overflow Emergency Response Plan submitted to EPA in its Plan of Operations: (i) ensure the NCUC is aware of all overflows from portions of the collection system and

any unanticipated bypass or upset that exceeds any effluent

limitation in the permit, and (ii) ensure that NCUC has appropriate

backup equipment, staff, and resources to response to future

situations where the primary lift station fails.

d.  2015 EPA Order, Paragraph 113(c). Defendant failed to address

the following in the Design and Performance Provisions in the Plan

of Operations submitted to EPA: (i) requirements and standards for

the installation of new sewers, pumps and other appurtenances; and

rehabilitation and repair projects; (ii) procedures and specifications

for inspecting and testing the installation of new sewers, pumps,

and other appurtenances and for rehabilitation and repair projects;

and (iii) list of all changes made or proposed to the facility to

respond to future lift station failures.

e.  2015 EPA Order, Paragraph 113(d). Defendant failed to create and

prepare a three-year budget in the Plan of Operations submitted to

EPA.

f.  2015 EPA Order, Paragraph 113(e). Defendant failed to address

sampling, DMRs, and "use in the field" criteria requirements for

the Standard Operating Procedures in the Plan of Operations
submitted to EPA.

g. <u>2015 EPA Order, Paragraph 117</u>. Defendant failed to include with
the reports and information required by the Order the certification
statement, signed and dated by either a principal executive officer
or a ranking elected official for NCUC, or a duly authorized
representative.

97.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b),
Defendant is liable for injunctive relief to prevent further discharges in violation of
the Clean Water Act.

98.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40
C.F.R. § 19.4, Defendant is liable for civil penalties of up to $37,500 per day of
violation for each violation of the 2015 EPA Order occurring after December 6,
2013 through November 2, 2015; and up to $56,460 per day of violation for each
violation of the 2015 EPA Order occurring after November 2, 2015.

## PRAYER FOR RELIEF

WHEREFORE, based upon the allegations set forth above, the United States
of America respectfully requests that this Court grant the following relief:

1.     A permanent injunction directing Defendant to take all steps
necessary to come into permanent and consistent compliance with the CWA,
including but not limited to the prohibition on unpermitted discharges and
compliance with the Facility's NPDES permit, as  contained in Section 301(a) of
the CWA, 33 U.S.C. § 1311(a).

2.     A judgment assessing civil penalties against Defendant for each day
of each separate violation of the CWA;

3.     Award the United States its costs of this action; and

4.     Grant such other and further relief as this Court deems appropriate.

> Respectfully submitted,
>
> FOR THE UNITED STATES:
>
> NATHANIEL DOUGLAS
> Deputy Chief
> Environmental Enforcement Section
> Environment and Natural Resources
> Division
> U.S. Department of Justice
>
> STACY D. COLEMAN
> Senior Counsel
> Environmental Enforcement Section
> Environment and Natural Resources
> Division
> U.S. Department of Justice
> 999 18th Street, Suite 370
> South Terrace

Denver, Colorado 80202
303-844-7240 (telephone)
Stacy.Coleman@usdoj.gov